FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
10/5/2020 4:11 PM
CLERK OF THE COURT
Blair Sandoval

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

RHONDA THOMAS AND BRYANT THOMAS, individually and on behalf and as next of
kin and guardians of their daughters K.T. AND L.T.,

       Plaintiffs,

v.                               No. _____ D-202-CV-2020-05597 _____

SANDIA PREPARATORY SCHOOL,

       Defendant.

## COMPLAINT FOR DAMAGES

    Plaintiffs Rhonda Thomas ("**Mrs. Thomas**") and Bryant Thomas ("**Mr. Thomas**"),

individually and on behalf and as next of kin and guardians of K.T. and L.T., (collectively, the

"**Thomases**") by and through its attorneys of record, Sutin, Thayer & Browne, a Professional

Corporation, submit this Complaint for Damages against Defendant Sandia Preparatory School

("**Sandia Prep**").

### PARTIES, VENUE AND JURISDICTION

1.    The Thomases are residents of Sandoval County, New Mexico.

2.    Upon information and belief, Sandia Prep is a New Mexico private school, with its

principal place of business located at 532 Osuna Rd. NE, Albuquerque, Bernalillo County, New

Mexico 87113.

3.    The acts and transactions subject to this Complaint occurred in Albuquerque, Bernalillo

County, New Mexico.

4.    This Court has jurisdiction over this action's subject matter and parties, and this Court is

the proper venue for this action.

### BACKGROUND

5.    Mr. and Mrs. Thomas are the parents of L.T. and K.T.

1

6.     L.T. and K.T are both minors.

7.     L.T. and K.T. were students at Sandia Prep. L.T. attended Sandia Prep as a 7th and 8th grade student from 2016 to 2018.  K.T. attended Sandia Prep as a 6th grade student during the 2017-18 school year.

8.     Throughout her time attending Sandia Prep as a student, K.T. had what was previously termed a learning disability now probably a learning difference. Specifically, K.T. had a Specific Learning Difference in Written Expression as a result of K.T.'s dysgraphia and dyslexia.

9.     Prior to enrolling K.T. in Sandia Prep, the Mr. and Mrs. Thomas informed Sandia Prep that K.T. had a learning difference due to K.T.'s dysgraphia and dyslexia.

10.    Sandia Prep was aware that K.T. had a learning difference due to her dysgraphia and dyslexia.

11.    Throughout her time attending Sandia Prep as a student, L.T. began to suffer from a mental health illness. Specifically, L.T. began developing anxiety.

12.    While attending Sandia Prep as a student, L.T. also began steadily experiencing symptoms associated with Amplified Musculoskeletal Pain Syndrome ("**AMPS**"). AMPS in children is also commonly referred to as Pediatric Fibromyalgia.

13.    AMPS is a condition that causes chronic pain and fatigue.

14.    While attending Sandia Prep, L.T. eventually developed and was diagnosed with AMPS.

*Allegations Specific to L.T.*

15.    During the 2016-17 school year, Sandia Prep took students to a school trip at Ghost Ranch, located in Abiquiu, New Mexico.

16.    Upon information and belief, during the school trip at Ghost Ranch, Sandia Prep left L.T. alone and unsupervised in a room overnight (the "**Ghost Ranch Incident**").

17.     After the Ghost Ranch Incident, L.T. began developing some mild anxiety that later revealed to be associated with school related activities at Sandia Prep.

18.     Later, Mrs. Thomas confronted Sandia Prep's Assistant Head of School for Middle School, Susi Hochrein ("**Ms. Hochrein**"), about the Ghost Ranch incident. Ms. Hochrein admitted to Mrs. Thomas that Sandia Prep staff should not have left L.T. in a room alone and unsupervised overnight at Ghost Ranch.

19.     On or about September 2016, Sandia Prep's Athletic Director, Willie Owens ("**Coach Owens**"), observed L.T. limping.

20.     L.T. was limping because she was experiencing pain and fatigue due to an onset of AMPS.

21.     Coach Owens, however, did not assist L.T. when he observed L.T. limping in apparent pain and discomfort.

22.     Instead of helping L.T. or expressing concern for L.T.'s health, Coach Owens ridiculed and embarrassed L.T. by taunting L.T. in front of other students. Specifically, Coach Owens chided L.T. that "since all you do is limp around campus, go get the water bottles out of my office." Later, Mrs. Thomas confronted Coach Owens about his comments towards L.T.  Mrs. Thomas explained that L.T.'s limping was caused by L.T.'s recent bouts of pain.

23.     On or about December 2016, Sandia Prep's Coordinator of Health and Counseling, Karen Lyall ("Ms. Lyall"), promised the Thomases that she would pair L.T. with an older Sandia Prep student. The older student would serve as L.T's mentor. This mentorship was supposed to help L.T. cope with her then steadily increasing anxiety. Ms. Lyall, however, failed to provide L.T. with a mentor.

24.     Ms. Lyall broke her promise to the Thomases.

25.     On or about December 2016, Ms. Hochrein promised the Thomases that she would reassign L.T.'s Sandia Prep advisor from L.T.'s then current advisor to a Sandia Prep teacher whom L.T. shared a good rapport.

26.     Ms. Hochrein also promised the Thomases that she would inform L.T.'s current advisor of the change to avoid burdening L.T. with the uncomfortable task of informing her current advisor of the same.

27.     Ms. Hochrein, however, failed to notify L.T.'s advisor that Ms. Hochrein was changing L.T.'s advisors.

28.     Ms. Hochrein placed L.T. in a position that required L.T. to notify L.T.'s then current advisor that L.T. was changing advisors.

29.     Ms. Hochrein broke her promise to Thomases.

30.     During the 2017-18 school year, Sandia Prep placed L.T. on a learning support plan after Sandia Prep's Learning Specialist, Peggy Kohler, requested the Thomases to have L.T. evaluated for a learning difference.

31.     Sandia Prep, however, failed to implement the learning support plan that school year.

32.     In or about the Fall Semester of the 2017-18 school year, L.T. told her friends during lunch hour at Sandia Prep that she wanted to commit suicide. Specifically, L.T. said stated that she was going to jump off a building at Sandia Prep. L.T.'s friends informed Sandia Prep staff that L.T. told them that L.T. wanted to commit suicide.

33.     Sandia Prep staff, however, failed to immediately contact Sandia Prep's school counselor and its nurse.

34.     This placed L.T. in immediate danger.

35.    At the end of the school year, it became apparent that Sandia Prep did not implement any procedure or mechanism to address L.T.'s suicide ideation.

36.    Sandia Prep's response to L.T.'s suicide ideation was inadequate.

37.    On or about April 2018, L.T.'s male classmate directed sexually explicit and harassing comments to L.T. during Physical Education at Sandia Prep. This sexual harassment occurred repeatedly while L.T. attend Sandia Prep, and L.T. had warned the male classmate several times to stop.

38.    L.T. reported her male classmate's reoccurring sexually harassing comments to Sandia Prep's Physical Education Teacher, Coach Karah Williams ("**Coach Williams**").

39.    Coach Williams, however, did not address L.T.'s report of sexual harassment.

40.    Instead, Coach Williams told L.T. to inform Ms. Hochrein about the sexual harassment. L.T., therefore, searched for Ms. Hochrein to report the sexual harassment to Ms. Hochrein. Ms. Hochrein, however, was not in her office.

41.    Because Ms. Hochrein was not in her office, L.T. returned to Coach Williams. Coach Williams again refused to address L.T.'s report of sexual harassment. Coach Williams once again directed L.T. to another Sandia Prep staff member. This time Coach Williams told L.T. to notify Sandia Prep's Dean of Students, Scott Jeffries ("**Mr. Jeffries**"). L.T., however, was uncomfortable speaking with a male about a male classmate's sexually harassing comments. L.T., therefore, asked Coach Williams if Coach Williams would accompany L.T. to speak with Mr. Jeffries. Coach Williams accepted L.T.'s request but only on the condition that L.T. wait for Coach Williams' break to end. Coach Williams, therefore, forced L.T. to wait thirty ("**30**") to forty-five ("**45**") minutes before any Sandia Prep faculty member would address L.T. report of sexual harassment.

42.     On or about April 23, 2018, the Thomases asked Sandia Prep's Modern Language Teacher, Kathryn Peacock, about whether Sandia Prep could possibly place L.T. on medical leave due to L.T.'s anxiety and anticipated AMPS diagnosis.

43.     Medical leave is allowed under Sandia Prep's student handbook.

44.     Sandia Prep, however, failed to promptly respond to the Thomases' inquiry about possibly placing L.T. on medical leave and instead took eight (8) days to set up a meeting between the Thomases and Sandia Prep's School Nurse, Lynn Jeffries ("Ms. Jeffries"), to discuss placing L.T. on medical leave.

45.     On or about May 1, 2018, Sandia Prep unilaterally placed L.T. on a modified schedule rather than on medical leave. Pursuant to this modified schedule, Sandia Prep allowed L.T. to perform school-work from home a few days a week.

46.     On or about May 3, 2018, Ms. Hochrein issued an ultimatum to the Thomases demanding that L.T. physically attend five days of class on Sandia Prep's premises over the next two weeks or else L.T. would be prohibited from attending yearbook day at Sandia Prep. Ms. Hochrein was aware that L.T. was on a modified schedule that would make it difficult if not unlikely for L.T. to comply with Ms. Hochrein's ultimatum.

47.     Ms. Hochrein's ultimatum was made in retaliation to the Thomases' repeated requests that Sandia Prep provide and implement reasonable accommodations for L.T.

48.     On or about May 2018, the Thomases began to realize that L.T.'s increased anxiety and development and aggravation of AMPS was connected with Sandia Prep's actions and inactions throughout her time attending Sandia Prep.

49.    At this time, it also became reasonably apparent to Mr. and Mrs. Thomas that Sandia Prep was engaging in a pattern and practice of refusing to accommodate L.T.'s anxiety, fatigue, learning difference and of acting in manner that aggravated L.T.'s anxiety and fatigue.

50.    Mr. and Mrs. Thomas, therefore, became aware that as a result of Sandia Prep's actions and inactions, L.T. (1) began developing extreme fatigue; (2) began developing depression; (3) L.T.'s anxiety steadily worsened and was aggravated; and (4) developed AMPS that was also aggravated.

51.    Upon leaving Sandia Prep and attending another school, L.T.'s anxiety, depression, and AMPS has improved only because the other school has treated L.T. better and accommodated her disabilities. Nevertheless, due to Sandia Prep's action and inactions, L.T. still suffers from anxiety and emotional trauma which not only affects her education, but also requires L.T. to see a therapist.

*Allegations Specific to K.T.*

52.    Before enrolling K.T. at Sandia Prep, Mrs. Thomas spoke with Ms. Kohler, and Sandia Prep's English teacher, Kent Wall, to discuss K.T.'s Specific Learning Difference in Written Expression.

53.    Ms. Kohler and Mr. Wall assured Mrs. Thomas that Sandia Prep could and would accommodate K.T. for K.T.'s learning difference.

54.    On or about August 9, 2017, Sandia Prep's Learning Specialist, Chris Parchert, created an accommodation plan for K.T. (the "**Accommodation Plan**").

55.    The Accommodation Plan was designed to accommodate K.T.'s Specific Learning Difference in Written Expression.

56.    Upon information and belief, the Accommodation Plan was forwarded to Lucy Kozikowski, K.T.'s advisor and English teacher at Sandia Prep.

57.    The Accommodation Plan included five (5) accommodations:

    A.    K.T. would likely benefit from seating at the front of the classroom.

    B.    To accommodate the speed at which she is able to write, K.T. should be afforded a computer for note-taking; her cell-phone for taking pictures of the board; and a "note-taking buddy" from who she can copy notes.

    C.    K.T. should not be penalized for misspelled words on assignments and tests.

    D.    K.T. should be afforded extra time on tests.

    E.    K.T. should be allowed to use a calculator in math (to accommodate math fluency).

58.    On or about September 25, 2017, the Accommodation Plan was discussed with Ms. Kozikowski at the Fall Advisory Conference.  At the Fall Advisory Conference, Ms. Kozikowski reassured Mrs. Thomas that Ms. Kozikowski was supportive of the Accommodation Plan

59.    During the 2017-18 school year, K.T. took Spanish with Bambi Otero ("**Ms. Otero**"), Spanish teacher at Sandia Prep.

60.    For her Spanish class with Ms. Otero, K.T. and other students were required to study Spanish words.

61.    To teach her Spanish class, Ms. Otero utilized a card system whereby students could indicate to Ms. Otero their desire to interact with Ms. Otero in class.  Under Ms. Otero's card system, students who desired to interact with Ms. Otero in class would indicate that desire by placing a green card over a pink card. In contrast, if a student did not want to interact with Ms. Otero in class, that student would need to place the pink card over the green card.

62.    Due to K.T.'s learning difference, K.T. struggled copying the Spanish words for Ms. Otero's Spanish class quickly and accurately.

63.    On or about October 26, 2017, Ms. Otero noticed K.T. struggling copying the Spanish words. Upon seeing K.T. have difficulty copying the words, Ms. Otero chided K.T. and told her that K.T would fail the class if K.T. did not spell the Spanish words correctly. Ms. Otero made these comments in front of K.T.'s classmates.

64.    On or about October 26, 2017, Mrs. Thomas asked Ms. Otero whether K.T. could have copies of the class's Spanish words so that K.T. could practice those words at home. Mrs. Thomas made this request so that K.T.'s Specific Learning Difference in Written Expression could be accommodated.

65.    Mrs. Thomas also requested that Ms. Otero allow K.T. to go to Sandia Prep's Learning Center to practice writing. Mrs. Thomas made this request also so that K.T.'s Specific Learning Difference in Written Expression could be accommodated.

66.    Ms. Otero, however, ignored both of Mrs. Thomas' requests.

67.    Mrs. Thomas also confronted Ms. Otero about Ms. Otero telling K.T. that K.T. would fail Spanish if K.T. did not learn to spell the Spanish words. Ms. Otero responded to Mrs. Thomas by informing Mrs. Thomas that K.T. could utilize Ms. Otero's card system and place a pink card over a green card if K.T. did not want to interact with Ms. Otero in class. Ms. Otero's response implied that if K.T. did not want to be told that she would fail Spanish due to her learning difference, K.T. should have indicated that she not want to interact with Ms. Otero in class.

68.    Instead of implementing the Accommodation Plan and accommodating K.T.'s learning difference, Ms. Otero sought to either discourage K.T. from participating in class or ridicule K.T.'s struggles with writing in front of her classmates.

69.    On or about October 27, 2017, Mrs. Thomas contacted Mr. Parchert to discuss how Sandia Prep was implementing the Accommodation plan. In response, Mr. Parchert told Mrs. Thomas the

following: "Sandia Prep is not doing enough with follow-up on accommodation plans. Teachers receive the documents at the beginning of the year, and currently there's no structure in place for meeting/discussing the implementation of the plans on an on-going basis."

70.     Mr. Parchert admitted to Mrs. Thomas that Sandia Prep does not adequately implement student accommodation plans.

71.     Mr. Parchert admitted to Mrs. Thomas that Sandia Prep does not have any mechanism, protocol, or procedure in place that ensures the implementation of student accommodation plans.

72.     On or about November 15, 2017, Mrs. Thomas contacted Mr. Parchert about having K.T. use a laptop for Ms. Otero's Spanish class. Mr. Parchert assured Mrs. Thomas that Ms. Otero would allow K.T. to use a laptop for Spanish class. However, Ms. Otero did not allow K.T. to use a laptop for Spanish class because Ms. Otero required that her students write down class notes in a class journal.

73.     The Accommodation Plan specifically allows K.T. to use a laptop to type class notes to accommodate K.T.'s Specific Learning Difference in Written Expression.

74.     On or about January 2018, K.T. began using her cell-phone to take photos of the vocabulary words on the classroom board during English class.

75.     Under the Accommodation Plan, K.T. was specifically allowed to use her cell phone to take pictures of classroom boards. Such use of her cell phone is intended to accommodate K.T.'s Specific Learning Difference in Written Expression.

76.     K.T.'s English teacher and Sandia Prep advisor, Ms. Kozikowski, was aware of the Accommodation Plan.

77.     Despite being aware of the Accommodation Plan, Ms. Kozikowski reprimanded K.T. for using K.T.'s cellphone to take photos of the vocabulary words on the classroom's board.

10

78.    Ms. Kozikowski had assumed that K.T. was avoiding doing her writing assignments and accused K.T. of the same.

79.    On or about January 19, 2018, the Thomases and K.T. attended a parent-teacher conference with Ms. Kozikowski. The parent-teacher conference was supposed to be led by K.T. so that K.T. could express herself about her experience at Sandia Prep and her future plans.

80.    During the parent-teacher conference, however, Ms. Kozikowski did not allow K.T. to express herself. Ms. Kozikowski also insisted that K.T. stop taking pictures of the vocabulary words and instead write them down. Ms. Kozikowski also asked the Thomases whether they wanted K.T. to have writing skills throughout K.T.'s life. When the Thomases reminded Ms. Kozikowski that K.T. had dyslexia and dysgraphia, Ms. Kozikowski responded that K.T. would just have to "figure it out."

81.    On or about April 18, 2018, K.T. was standing in the lunch line and placed her hand on a counter near the lunch line. Sandia Prep teacher, Larry Hanley ("Mr. Hanley") placed his hand on K.T.'s hand to remove K.T.'s hand from the counter.

82.    Neither K.T. nor the Thomases consented to Mr. Hanley's physical contact of K.T.

83.    Around this time, the Thomases also met with Sandia Prep's Head of School, Bill Sinfield, to discuss implementing the Accommodation Plan.

84.    At this meeting, Mr. Sinfield acknowledged that he had not seen the Accommodation Plan. Mr. Sinfield informed the Thomases that he would need to review the Accommodation Plan before he could support its implementation. Mr. Sinfield, however, failed to further discuss the Accommodation with the Thomases.

85.    Sandia Prep failed to implement the Accommodation Plan throughout K.T.'s time attending Sandia Prep.

86.     Sandia Prep, therefore, failed to accommodate K.T.'s learning difference.

87.     Sandia Prep failed to honor its agreement with and assurance to the Thomases.

### *Allegations Specific to Both L.T. and K.T.*

88.     On or about January 23, 2018, Sandia Prep's Assistant Head of Middle School, Susi Hochrein, informed the Thomases that: "If you find you cannot trust [Sandia Prep] to meet the needs of either [K.T.] or [L.T.], you may want to consider another school."

89.     Ms. Hochrein's made these comments after Mrs. Thomas expressed her displeasure with Sandia Prep's mistreatment of and lack of accommodations for L.T. and K.T.

90.     Ms. Hochrein also made these comments after L.T. and K.T. visited with Ms. Hochrein so that L.T. and K.T. could advocate for accommodations for K.T.

91.     Ms. Hochrein's comments were made in retaliation to the Thomases and their daughters' request for accommodations.

### COUNT I:  BREACH OF CONTRACT as to L.T. for the 2016-17 SCHOOL YEAR

92.     The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

93.     Through Sandia Prep's marketing, admissions, process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment,  Sandia Prep promised the Thomases that for the 2016-17 school year it would provide L.T. with a quality education that included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities.

94.     In exchange for Sandia Prep's promise, the Thomases agreed to pay and did pay to Sandia Prep tuition fees in the amount of $21,500 for the 2016-17 school year for L.T. (the "**First Agreement as to L.T.**").

95.     The First Agreement as to L.T. between Sandia Prep and the Thomases constitutes a valid, binding contract under which Sandia Prep was obligated to provide L.T. with the type of quality education described in Paragraph 93 of this Complaint in exchange for the Thomases paying the aforementioned tuition fees to Sandia Prep.

96.     Sandia Prep breached its obligations by failing to provide L.T. with the type of quality education described in Paragraph 93 of this Complaint.

97.     Sandia Prep's breach is material because it defeats an essential purpose of Sandia Prep's promise: to provide L.T. with the type of quality education described in Paragraph 93 of this Complaint in exchange for tuition payments by the Thomases to Sandia Prep.

98.     Sandia Prep's breach was intentional, malicious, willful, and wanton.

99.     The Thomases have been damaged by Sandia Prep's breach and are entitled to reimbursement for the tuition payments made to Sandia Prep and all expenses incurred in addition to pre- and post-judgment interest, incidental, consequential, and punitive damages to be proven at trial.

### COUNT II:  BREACH OF CONTRACT as to L.T. for the 2017-18 School Year

100.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

101.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, Sandia Prep promised the Thomases that for the 2017-18

school year it would provide L.T. with a quality education, which included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities.

102.    In exchange for Sandia Prep's promise, the Thomases agreed to pay and did pay to Sandia Prep tuition fees in the amount of $21,500 for the 2017-18 school year for L.T. (the "**Second Agreement as to L.T.**").

103.    The Second Agreement as to L.T. between Sandia Prep and the Thomases constitutes a valid, binding contract under which Sandia Prep was obligated to provide L.T. with the type of quality education described in Paragraph 101 of this Complaint in exchange for the Thomases paying the aforementioned tuition fees to Sandia Prep.

104.    Sandia Prep breached its obligations by failing to provide L.T. with the type of quality education described in Paragraph 101 of this Complaint.

105.    Sandia Prep's breach is material because it defeats an essential purpose of Sandia Prep's promise: to provide L.T. with the type of quality education described in Paragraph 101 of this Complaint in exchange for tuition payments by the Thomases to Sandia Prep.

106.    Sandia Prep's breach was intentional, malicious, willful, and wanton.

107.    The Thomases have been damaged by Sandia Prep's breach and are entitled to reimbursement for the tuition payments made to Sandia Prep and all expenses incurred in addition to pre- and post-judgment interest, incidental, consequential and punitive damages to be proven at trial.

### COUNT III:  BREACH OF CONTRACT as to K.T. for the 2017-18 School Year

108.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

109.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, Sandia Prep promised the Thomases that for the 2017-18 school year it would provide K.T. with a quality education, which included providing and implementing accommodations for any and all of K.T.'s learning disabilities, mental disabilities, and physical disabilities.

14

110.    In exchange for Sandia Prep's promise, the Thomases agreed to pay and did pay to Sandia Prep tuition fees in the amount of $21,500 for the 2017-18 school year for K.T. (the "**Agreement as to K.T.**").

111.    The Agreement as to K.T. between Sandia Prep and the Thomases constitutes a valid, binding contract under which Sandia Prep was obligated to provide K.T. with the type of quality education described in Paragraph 109 of this Complaint in exchange for the Thomases paying the aforementioned tuition fees to Sandia Prep.

112.    Sandia Prep breached its obligations by failing to provide K.T. with the type of quality education described in Paragraph 109 of this Complaint.

113.    Sandia Prep's breach is material because it defeats an essential purpose of Sandia Prep's promise: to provide K.T. with the type of quality education described in Paragraph 109 of this Complaint in exchange for tuition payments by the Thomases.

114.    Sandia Prep's breach was intentional, malicious, willful, and wanton.

115.    The Thomases have been damaged by Sandia Prep's breach and are entitled to reimbursement for the tuition payments made to Sandia Prep and all expenses incurred in addition to pre- and post-judgment interest, incidental, consequential, and punitive damages to be proven at trial.

## COUNT IV:  BREACH OF GOOD FAITH AND FAIR DEALING as to L.T. for 2016-17 School Year

116.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

117.    Every contract imposes upon the parties thereto an implied covenant of good faith and fair dealing in the performance of the contract, and requires the parties to the contract to do nothing that will interfere with the other party receiving the benefits of the contract.

118.    The First Agreement as to L.T. between Sandia Prep and the Thomases is a valid, binding contract which imposes upon Sandia Prep the implied duty of good faith and fair dealing in performing its obligations thereunder.

119.    Sandia Prep breached this duty of good faith and fair dealing, such breach includes Sandia Prep's conduct in withholding the benefits of the contract from the Thomases by failing to provide L.T. with a quality education for the 2016-17 school year, which included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities.

120.    Sandia Prep acted in bad faith in failing to perform under the contract and/or wrongfully or intentionally used the contract to harm the Thomases.

121.    Sandia Prep's actions were intentional, malicious, willful, and wanton.

122.    The Thomases have been damaged by Sandia Prep's breach and are entitled to reimbursement for the tuition payments made to Sandia Prep and all expenses incurred in addition to pre- and post-judgment interest, incidental, consequential, and punitive damages to be proven at trial.

**COUNT V:  BREACH OF GOOD FAITH AND FAIR DEALING as to L.T. for the 2017-18 School Year**

123.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

124.    Every contract imposes upon the parties thereto an implied covenant of good faith and fair dealing in the performance of the contract, and requires the parties to the contract to do nothing that will interfere with the other party receiving the benefits of the contract.

125.    The Second Agreement as to L.T. between Sandia Prep and the Thomases is a valid, binding contract which imposes upon Sandia Prep the implied duty of good faith and fair dealing in performing its obligations thereunder.

126.    Sandia Prep breached this duty of good faith and fair dealing, such breach includes Sandia Prep's conduct in withholding the benefits of the contract from the Thomases by failing to provide L.T. with a quality education for the 2017-2018 school year, which included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities.

127.    Sandia Prep acted in bad faith in failing to perform under the contract and/or wrongfully or intentionally used the contract to harm the Thomases.

128.   Sandia Prep's actions were intentional, malicious, willful, and wanton.

129.   The Thomases have been damaged by Sandia Prep's breach and are entitled to reimbursement for the tuition payments made to Sandia Prep and all expenses incurred in addition to pre- and post-judgment interest, incidental, consequential, and punitive damages to be proven at trial.

## COUNT VI:  BREACH OF GOOD FAITH AND FAIR DEALING as to K.T. for the 2017-18 School Year

130.   The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

131.   Every contract imposes upon the parties thereto an implied covenant of good faith and fair dealing in the performance of the contract, and requires the parties to the contract to do nothing that will interfere with the other party receiving the benefits of the contract.

132.   The Agreement as to K.T. between Sandia Prep and the Thomases is a valid, binding contract which imposes upon Sandia Prep the implied duty of good faith and fair dealing in performing its obligations thereunder.

133.   Sandia Prep breached this duty of good faith and fair dealing, such breach includes Sandia Prep's conduct in withholding the benefits of the contract from the Thomases by failing to provide K.T. with a quality education for the 2017-18 school year, which included providing and implementing accommodations for any and all of K.T.'s learning disabilities, mental disabilities, and physical disabilities.

134.   Sandia Prep acted in bad faith in failing to perform under the contract and/or wrongfully or intentionally used the contract to harm the Thomases.

135.   Sandia Prep's actions were intentional, malicious, willful, and wanton.

136.   The Thomases have been damaged by Sandia Prep's breach and are entitled to reimbursement for the tuition payments made to Sandia Prep and all expenses incurred in addition to pre- and post-judgment interest, incidental, consequential, and punitive damages to be proven at trial.

**COUNT VII:  PROMISSORY ESTOPPEL as to L.T. for the 2016-17 School Year**

137.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

138.    If for any reason, the trier-of-fact in this case does not recognize the existence of a valid and binding contract, the Thomases assert a claim for promissory estoppel against Sandia Prep.

139.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, Sandia Prep promised the Thomases that it would provide L.T. with a quality education, which included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities in exchange for payment by the Thomases of tuitions fees in the amount of $21,500 for the 2016-17 school year.

140.    The Thomases relied on Sandia Prep's promise to enroll L.T. in Sandia Prep for the 2016-17 school year and paying Sandia Prep $21,500 in tuition fees.

141.    Sandia Prep's promise of providing L.T. with a quality education, which included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities, was made with the intent to cause the Thomases to reasonably rely upon the promise and thereby change its position by enrolling L.T. in Sandia Prep for the 2016-17 school year and paying Sandia Prep $21,500 in tuition fees.

142.    The Thomases reasonably relied upon Sandia Prep's promise to the Thomases's detriment.

143.    The Thomases' change in position was substantial.

144.    Sandia Prep knew or should have known that the Thomases would enroll L.T. in Sandia Prep for the 2016-17 school year and pay Sandia Prep $21,500 in tuition fees after Sandia Prep made its promise.

145.    The Thomases are entitled to recover from Sandia Prep $21,500, plus pre-judgment interest.

146.    As a result of the Thomases's reliance, Sandia Prep is estopped from denying its promise and is liable for damages resulting from the breach of its promise herein.

**COUNT VIII:  PROMISSORY ESTOPPEL as to L.T. for the 2017-18 School Year**

147.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

148.    If for any reason, the trier-of-fact in this case does not recognize the existence of a valid and binding contract, the Thomases assert a claim for promissory estoppel against Sandia Prep.

149.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, Sandia Prep promised the Thomases that it would provide L.T. with a quality education, which included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities in exchange for payment by the Thomases of tuitions fees in the amount of $21,500 for the 2017-18 school year.

150.    The Thomases relied on Sandia Prep's promise by enrolling L.T. in Sandia Prep for the 2017-18 school year and paying Sandia Prep $21,500 in tuition fees.

151.    Sandia Prep's promise of providing L.T. with a quality education, which included providing and implementing accommodations for any and all of L.T.'s learning disabilities, mental disabilities, and physical disabilities, was made with the intent to cause the Thomases to reasonably rely upon the promise and thereby change its position by enrolling L.T. in Sandia Prep for the 2017-18 school year and paying Sandia Prep $21,500 in tuition fees.

152.    The Thomases reasonably relied upon Sandia Prep's promise to their detriment.

153.    The Thomases' change in position was substantial.

154.    Sandia Prep knew or should have known that the Thomases would enroll L.T. in Sandia Prep for the 2017-18 school year and pay Sandia Prep $21,500 in tuition fees after Sandia Prep made its promise.

155.    The Thomases are entitled to recover from Sandia Prep $21,500, plus pre-judgment interest.

156.    As a result of the Thomases' reliance, Sandia Prep is estopped from denying its promise and is liable for damages resulting from the breach of its promise herein.

**COUNT IX:  PROMISSORY ESTOPPEL as to K.T. for the 2017-18 School Year**

157.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

158.    If for any reason, the trier-of-fact in this case does not recognize the existence of a valid and binding contract, the Thomases assert a claim for promissory estoppel against Sandia Prep.

159.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, Sandia Prep promised the Thomases that it would provide K.T. with a quality education, which included providing and implementing accommodations for any and all of K.T.'s learning disabilities, mental disabilities, and physical disabilities in exchange for payment by the Thomases of tuitions fees in the amount of $21,500 for the 2017-18 school year.

160.    The Thomases relied on Sandia Prep's promise by enrolling K.T. in Sandia Prep for the 2017-18 school year and paying Sandia Prep $21,500 in tuition fees.

161.    Sandia Prep's promise of providing K.T. with a quality education that includes providing and implementing accommodations for any and all of K.T.'s learning disabilities, mental disabilities, and physical disabilities, was made with the intent to cause the Thomases to reasonably rely upon the promise and thereby change its position by enrolling K.T. in Sandia Prep for the 2017-18 school year and paying Sandia Prep $21,500 in tuition fees.

162.    The Thomases reasonably relied upon Sandia Prep's promise to the Thomases' detriment.

163.    The Thomases' change in position was substantial.

164.    Sandia Prep knew or should have known that the Thomases would enroll K.T. in Sandia Prep for the 2017-18 school year and pay Sandia Prep $21,500 in tuition fees after Sandia Prep made its promise.

165.    The Thomases are entitled to recover from Sandia Prep $21 500, plus pre-judgment interest.

166.    As a result of the Thomases's reliance, Sandia Prep is estopped from denying its promise and is liable for damages resulting from the breach of its promise herein.

### COUNT X: FRAUD as to L.T. for the 2016-17 School Year

167.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

168.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, during the 2016-17 school year, Sandia Prep made representations of fact to the Thomases that were not true.

169.    Among the false representations of fact that Sandia Prep made to the Thomases were the following:

      A.    That Sandia Prep could support a student like L.T., who suffers from anxiety and fatigue;

      B.    That Sandia Prep would support a student like L.T., who suffers from anxiety and fatigue;

170.    Sandia Prep did not support L.T. in her anxiety and fatigue and other health issues.

171.    Sandia Prep's representations of fact were false.

172.    Sandia Prep knew that the representations of fact that it made to the Thomases were false or made them recklessly.

173.    Sandia Prep made these false representations of fact with the intent to deceive and to induce the Thomases to rely on these representations of fact to enroll L.T. in Sandia Prep for the 2016-17 school year and to pay $21,500.00 in tuition.

174.    The Thomases did in fact rely on Sandia Prep's false representations of fact to enroll L.T. in Sandia Prep and to pay Sandia Prep tuition for the 2016-17 school year in the amount of $21,500.00.

175.    Sandia Prep's actions were intentional, malicious, willful, and wanton.

176.    Sandia Prep is liable for damages resulting from its fraudulent misrepresentation and punitive.

**COUNT XI: FRAUD as to L.T. for the 2017-18 School Year**

177.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

178.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, during the 2017-18 school year, Sandia Prep made representations of fact to the Thomases that were not true.

179.    Among the false representations of fact that Sandia Prep made to the Thomases were the following:

        a.    That Sandia Prep could support a student like L.T., who suffers from anxiety and fatigue;

        b.    That Sandia Prep would support a student like L.T., who suffers from anxiety and fatigue;

        c.    That the learning support plan for the 2017-2018 year would be implemented to best serve L.T. for the education contracted for.

180.    Sandia Prep did not support L.T. in her anxiety and fatigue.

181.    Sandia Prep did not implement L.T.'s learning support plan for the 2017-18 school year.

182.    Sandia Prep's representation of fact were false.

183.    Sandia Prep knew that the representations of fact that it made to the Thomases were false or made them recklessly.

184.    Sandia Prep made these false representations of fact with the intent to deceive and to induce the Thomases to rely on theses representations of fact to enroll L.T. in Sandia Prep for the 2017-18 school year and to pay $21,500.00 in tuition.

185.    The Thomases did in fact rely on Sandia Prep's false representations of fact to enroll L.T. in Sandia Prep and to pay Sandia Prep tuition for the 2017-18 school year in the amount of $21,500.00.

186.    Sandia Prep's actions were intentional, malicious, willful, and wanton.

22

187.    Sandia Prep is liable for damages resulting from its fraudulent misrepresentation and punitive damages.

## COUNT XII: FRAUD as to K.T. for the 2017-18 School Year

188.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

189.    Through Sandia Prep's marketing, admissions process, handbooks, and representations and communications made to the Thomases by Sandia Prep's agents or employees while acting within the course and scope of their agency or employment, during the 2017-18 school year, Sandia Prep made representations of fact to the Thomases that were not true.

190.    Among the false representations of fact that Sandia Prep made to the Thomases were the following:

A.    That Sandia could accommodate a student like K.T., who suffers from a learning disability/difference (Specific Learning Disability in Written Expression);

B.    That Sandia would accommodate a student like K.T., who suffers from a learning disability/difference (Specific Learning Disability in Written Expression);

C.    That the Accommodation Plan for the 2017-2018 year would be implemented which permitted the following accommodations for K.T.:

a.    Use of her cell phone to take photos of information on the board;

b.    Use of her laptop for class;

191.    Sandia Prep did not accommodate K.T.'s Specific Learning Difference in Written Expression

192.    Sandia Prep did not implement the Accommodation Plan for the 2017-18 school year.

193.    Sandia Prep discouraged K.T. from using her phone to take photos of information on the board.

194.    Sandia Prep did not support K.T.'s use of her laptop for class.

195.    Sandia Prep's representation of fact were false.

196.    Sandia Prep knew that the representations of fact that it made to the Thomases were false or made them recklessly.

197.    Sandia Prep made these false representations of fact with the intent to deceive and to induce the Thomases to rely on theses representations of fact to enroll K.T. in Sandia Prep for the 2017-18 school year and to pay $21,500.00 in tuition.

198.    The Thomases did in fact rely on Sandia Prep's false representations of fact to enroll K.T. in Sandia Prep and to pay Sandia Prep tuition for the 2017-18 school year in the amount of $21,500.00.

199.    Sandia Prep's actions were intentional, malicious, willful, and wanton.

200.    Sandia Prep is liable for damages resulting from its fraudulent misrepresentation and punitive damages.

### COUNT XIII: NEGLIGENT MISREPRESENTATION as to L.T. for the 2016-17 School Year

201.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

202.    During the 2016-17 school year, Sandia Prep, through its agents or employees while acting within the course and scope of their agency or employment, made statements to the Thomases.

203.    Among the statements that Sandia Prep made to the Thomases were the following:

   A.    That Sandia Prep could support a student like L.T., who suffers from anxiety and fatigue;

   B.    That Sandia Prep would support a student like L.T., who suffers from anxiety and fatigue;

   C.    That the learning support plan for the 2016-2017 year would be implemented to best serve L.T. for the education contracted for.

204.    Sandia Prep did not support L.T. in her anxiety and fatigue.

205.    Sandia Prep did not implement L.T.'s accommodation plan for the 2016-17 school year.

206.    Sandia Prep's statements to the Thomases were untrue.

24

207.    Sandia Prep made untrue statements to the Thomases with the intent that the Thomases rely upon those statements to enroll L.T. in Sandia Prep for the 2016-17 school year and pay $21,500.00 in tuition.

208.    The Thomases did in fact rely on Sandia Prep's untrue statements to enroll L.T. in Sandia Prep and to pay Sandia Prep tuition for the 2016-17 school year in the amount of $21,500.00.

209.    Sandia Prep's untrue statements were material misrepresentations.

210.    Sandia Prep had no reasonable grounds for believing that its statements to the Thomases were true.

211.    Sandia Prep's made negligent misrepresentations to the Thomases.

212.    Sandia Prep is liable for the Thomases damages caused by its negligent and material misrepresentations.

**COUNT XIV: NEGLIGENT MISREPRESENTATION as to L.T. for the 2017-18 School Year**

213.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

214.    During the 2017-18 school year, Sandia Prep, through its agents or employees while acting within the course and scope of their agency or employment, made statements to the Thomases.

215.    Among the statements that Sandia Prep made to the Thomases were the following:

A.     That Sandia Prep could support a student like L.T., who suffers from anxiety and fatigue;

B.     That Sandia Prep would support a student like L.T., who suffers from anxiety and fatigue;

C.     That the learning support plan for the 2017-2018 year would be implemented to best serve L.T. for the education that the Thomases contracted for.

216.    Sandia Prep did not support L.T. in her anxiety and fatigue.

217.    Sandia Prep did not implement L.T.'s learning support plan for the 2017-18 school year.

218.    Sandia Prep's statements to the Thomases were untrue.

219.   Sandia Prep made untrue statements to the Thomases with the intent that the Thomases rely upon those statements to enroll L.T. in Sandia Prep for the 2017-18 school year and to pay $21,500.00 in tuition.

220.   The Thomases did in fact rely on Sandia Prep's untrue statements to enroll L.T. in Sandia Prep and to pay Sandia Prep tuition for the 2017-18 school year in the amount of $21,500.00.

221.   Sandia Prep's untrue statements were material misrepresentations.

222.   Sandia Prep had no reasonable grounds for believing that its statements to the Thomases were true.

223.   Sandia Prep's made negligent misrepresentations to the Thomases.

224.   Sandia Prep is liable for the Thomases damages caused by its negligent and material misrepresentations.

**COUNT XV: NEGLIGENT MISREPRESENTATION as to K.T. for the 2017-18 School Year**

225.   The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

226.   During the 2017-18 school year, Sandia Prep, through its agents or employees while acting within the course and scope of their agency or employment, made statements to the Thomases.

227.   Among the statements that Sandia Prep made to the Thomases were the following:

    A.   That Sandia could accommodate a student like K.T., who suffers from a learning disability/difference (Specific Learning Disability in Written Expression);

    B.   That Sandia would accommodate a student like K.T., who suffers from a learning disability/difference (Specific Learning Disability in Written Expression);

    C.   That the Accommodation Plan for the 2017-2018 year would be implemented which permitted the following accommodations for K.T.:

        a.   Use of her phone to take photos of information on the board;

        b.   Use of her laptop for class;

228.   Sandia Prep did not accommodate K.T.'s Specific Learning Difference in Written Expression.

229. Sandia Prep did not implement the Accommodation Plan for the 2017-18 school year.

230. Sandia Prep forbid K.T. from using her cell phone to take photos of information on the board.

231. Sandia Prep did not allow K.T. to use her laptop for class.

232. Sandia Prep's statements to the Thomases were untrue.

233. Sandia Prep made untrue statements to the Thomases with the intent that the Thomases rely upon those statements to enroll K.T. in Sandia Prep for the 2017-18 school year and to pay $21,500.00 in tuition.

234. The Thomases did in fact rely on Sandia Prep's untrue statements to enroll K.T. in Sandia Prep and to pay Sandia Prep tuition for the 2017-18 school year in the amount of $21,500.00.

235. Sandia Prep's untrue statements were material misrepresentations.

236. Sandia Prep had no reasonable grounds for believing that its statements to the Thomases were true.

237. Sandia Prep's made negligent misrepresentations to the Thomases.

238. Sandia Prep is liable for the Thomases damages caused by its negligent and material misrepresentations.

**COUNT XVI: NEGLIGENCE/RESPONDEAT SUPERIOR as to L.T.**

239. The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

240. Throughout L.T.'s time attending Sandia Prep, Sandia Prep owed a duty of care to L.T.

241. Throughout L.T.'s time attending Sandia Prep, Sandi Prep continuously breached its duty of care to L.T. through its actions and inactions. Sandia Prep's breach includes but is not limited to:

    A.    leaving L.T., a child, alone and unsupervised in a room, away from home and school, overnight at Ghost Ranch;

    B.    failing to provide L.T. with assistance when observing her experience chronic pain and fatigue during L.T.'s time attending Sandia Prep;

    C.    failing to support L.T. in her anxiety and instead placing L.T. in positions that aggravated and worsened her anxiety during L.T.'s time attending Sandia Prep;

D.      failing to implement any procedure or mechanism that addressed L.T.'s suicide

ideation during L.T.'s time attending Sandia Prep;

E.      failing to adequately address L.T's sexual harassment report;

F.      failing to implement L.T.'s learning plan; and

G.      refusing to accommodate L.T.'s anxiety and AMPS upon the Thomases requests

242.    The acts and omissions referenced above are the acts and omissions of Sandia Prep's agents or

employees.

243.    At all material times relevant hereto, Sandia Prep's agents or employees were acting within the

course and scope of their employment and agency with Sandia Prep.

244.    At all material times relevant hereto, Sandia Prep's employees or agents were working under Sandia

Prep's control.

245.    At all material times relevant hereto, Sandia Prep's employees or agents were acting in furtherance

of Sandia Prep's legitimate business activities.

246.    Based upon principles of respondeat superior and theories of agency, Sandia Prep is vicariously

liable for its employees' or agents' actions and omissions.

247.    Through its employees' or agents' actions and omissions, Sandia Prep was negligent.

248.    As a direct and proximate result of Sandia Prep's negligence throughout L.T's time attending

Sandia Prep, L.T.'s anxiety steadily increased and was aggravated, resulting in incurred medical expenses

and future medical treatment for said anxiety.

249.    As a further direct and proximate result of Sandia Prep's negligence throughout L.T's time

attending Sandia Prep, L.T. developed AMPS that has also been further aggravated by Sandia Prep's

negligence resulting in incurred medical expenses and future medical treatment for said AMPS.

250.    As a further direct and proximate result of Sandia Prep's negligence throughout L.T's time

attending Sandia Prep, L.T. has suffered, continues to suffer, and will continue to suffer, mental anguish,

emotional distress, and pain and suffering.

251.   Sandia Prep's actions and inactions were intentional, malicious, willful, and wanton.

252.   Sandia Prep is liable for L.T.'s damages in an amount to be proven at trial, including punitive damages.

## COUNT XVII: NEGLIGENT TRAINING AND SUPERVISION as to L.T.

253.   The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

254.   Sandia Prep was the employer of Susi Hochrein, Willie Owens, Karen Lyall, Peggy Kohler, Karah Williams, Scott Jeffries, and Lynn Jeffries, among other Sandia Prep faculty and staff.

255.   Sandia Prep was negligent in training and supervising Susi Hochrein, Willie Owens, Karen Lyall, Peggy Kohler, Karah Williams, Scott Jeffries, Lynn Jeffries, and other Sandia Pre faculty and staff.

256.   As a direct and proximate result of Sandia Prep's negligence throughout L.T's time attending Sandia Prep, L.T.'s anxiety steadily increased and was aggravated, resulting in incurred medical expenses and requiring future medical treatment for said anxiety.

257.   As a further direct and proximate result of Sandia Prep's negligence throughout L.T's time attending Sandia Prep, L.T.'s has been diagnosed with AMPS that has further been aggravated by Sandia Prep's negligence, resulting in incurred medical expenses and requiring future medical treatment for said AMPS.

258.   As a further direct and proximate result of Sandia Prep's negligence throughout L.T's time attending Sandia Prep, L.T. has suffered, continues to suffer, and will continue to suffer, mental anguish, emotional distress, and pain and suffering.

259.   Sandia Prep's actions and inactions were intentional, malicious, willful, and wanton.

260.   Sandia Prep is liable for L.T.'s damages in an amount to be proven at trial, including punitive damages.

## COUNT XVIII: BATTERY/ RESPONDEAT SUPERIOR as to K.T.

261.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

262.    Mr. Hanley intentionally touched or applied force to K.T. by removing her hand from the lunch counter.

263.    Mr. Hanley acted in a rude, angry, or insolent manner.

264.    Mr. Hanley committed battery.

265.    As a direct and proximate cause of Mr. Hanley's battery, K.T. suffered nominal damages.

266.    At all material times hereto, Mr. Hanley was an employee or agent of Sandia Prep.

267.    At all material times hereto, Mr. Hanley was acting within the course and scope of his employment or agency with Sandia Prep.

268.    Sandia Prep is liable for Mr. Hanley's actions.

269.    Sandia Prep approved, authorized, benefited, or ratified Mr. Hanley's intentional conduct.

270.    Sandia Prep's actions through Mr. Hanley were intentional, malicious, willful, and wanton.

271.    Sandia Prep is liable for K.T.'s damages in an amount to be proven at trial, including punitive damages.

## COUNT XIX: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT as to K.T.

272.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

273.    Title III of the Americans with Disabilities Act ("**ADA**") mandates that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

274.    Section 12102(1) defines disability to include not only a physical impairment but also a "mental impairment that substantially limits one or more of the major life activities of [an] individual [or] a record of such an impairment." "Major life activities" include "learning." 42. U.S.C. § 12101(2)(A).

275.    Consequently, the federal regulations implementing the ADA define "mental impairment" as specifically including, among other things, an "intellectual disability, . . . an emotional or mental illness, and [a] specific learning disability." 28 C.F.R. pt. 36.105(b)(1)(ii).

276.    K.T.'s suffers from dyslexia and dysgraphia.

277.    Due to K.T.'s dyslexia and dysgraphia, K.T. suffers from a Specific Learning Disability/Difference in Written Expression that substantially limits her ability to learn.

278.    K.T., therefore, has a mental impairment that substantially limits a major life activity.

279.    K.T. has a disability as defined under the ADA.

280.    A "public accommodation," includes a "secondary . . . private school, or other places of education." 42 U.S.C. § 12181.

281.    Sandia Prep is a secondary private school and place of education.

282.    Sandia Prep is a place of public accommodation as defined under the ADA.

283.    By failing to implement K.T.'s Accommodation Plan during the 2017-2018 school year, Sandia Prep discriminated against K.T. on the basis of her disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Sandia Prep.

284.    By failing to implement K.T.'s Accommodation Plan during the 2017-2018 school year, Sandia Prep denied K.T. the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Sandia Prep.

285.    By failing to implement K.T.'s Accommodation Plan during the 2017-2018 school year, Sandia Prep denied K.T. the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

286.    Sandia Prep violated the ADA as to K.T.

31

287.    Because Sandia Prep failed to accommodate K.T. as required by the ADA, K.T. was forced to leave Sandia Prep and attend another school.

288.    Because of Sandia Prep's failure to provide K.T. with accommodations as required by the ADA, K.T. is unable to re-enroll as a student at Sandia Prep.

## COUNT XX: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT as to L.T.

289.    The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

290.    Title III of the Americans with Disabilities Act ("the ADA") mandates that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

291.    Section 12102(1) defines disability to include not only a physical impairment but also a "mental impairment that substantially limits one or more of the major life activities of [an] individual [or] a record of such an impairment." "Major life activities" include "learning." 42. U.S.C. § 12101(2)(A).

292.    L.T. suffers from anxiety.

293.    L.T. also suffers from chronic pain and fatigue associated with AMPS. While at Sandia Prep, L.T. developed AMPS and was later diagnosed with the same.

294.    L.T.'s anxiety and AMPS symptoms substantially limits her ability to learn.

295.    L.T., therefore, has at mental and physical impairment that substantially limits a major life activity.

296.    L.T. has a disability as defined under the ADA.

297.    A "place of public accommodation" includes a "secondary . . . private school, or other places of education." 42 U.S.C. § 12181.

298.    Sandia Prep is a secondary private school and place of education.

299.    Sandia Prep is a place of public accommodation as defined under the ADA.

300.   By failing to provide any accommodations for L.T.'s disabilities, Sandia Prep discriminated against L.T. on the basis of her disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Sandia Prep.

301.   By failing to provide any accommodations for L.T.'s disabilities, Sandia Prep denied L.T. the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of Sandia Prep.

302.   By failing to provide any accommodations for L.T.'s disabilities, Sandia Prep denied L.T. the opportunity to participate in, or benefit from a good, service, facility, privilege, advantage, or accommodation that was not equal to that afforded to other individuals.

303.   Sandia Prep violated the ADA as to L.T.

304.   Because Sandia Prep failed to accommodate L.T. as required by the ADA, L.T. was forced to leave Sandia Prep and attend another school.

305.   Because of Sandia Prep's failure to provide L.T. with accommodations as required by the ADA, L.T. is unable to re-enroll as a student at Sandia Prep.

### COUNT XXI: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT as to MR. and MRS. THOMAS

306.   The Thomases incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

307.   The ADA prohibits entities from retaliating against any individual who aids or encourages any other individual to exercise or enjoy "any right granted or protected by the ADA." 28 C.F.R. pt. 36.206(b).

308.   The ADA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act." 42 U.S.C.S. § 12203.

309.   While K.T. and L.T. attended Sandia Prep, Mr. and Mrs. Thomas aided and encouraged each of them to exercise and enjoy their rights granted and protected by the ADA.

33

310.    Sandia Prep retaliated against Mr. and Mrs. Thomas on account of their having aided or encouraged K.T. and L.T. in the exercise or enjoyment of, any right granted or protected by the ADA. Such retaliation includes Ms. Hochrein's ultimatum to the Mr. and Mrs. Thomas and her statement to Mr. and Mrs. Thomas that they should find another school for K.T. and L.T.

311.    Sandia Prep violated the ADA as to Mr. and Mrs. Thomas.

### REQUEST FOR RELIEF

WHEREFORE, the Thomases pray for:

1.    Compensatory damages for any medical bills incurred as a result of Sandia Prep's actions and inactions;

2.    Restitutionary damages in the amount to be proven at trial reflecting the benefit gained by Sandia Prep as a result of its wrongful conduct and the total tuition fee payments the Thomases paid to Sandia Prep;

3.    Punitive damages in an amount to be proven at trial;

4.    A declaratory judgment that Sandia Prep is in violation of the specific requirements of Title III of the ADA as described in this Complaint;

5.    Pre-judgment and post-judgment interest as may be provided by law;

6.    Attorney fees and litigation costs as may be provided by law; and

7.    Such other and further relief as the Court may deem just and proper.

SUTIN, THAYER & BROWNE
A Professional Corporation

By:    /s/ Benjamin E. Thomas
          Benjamin E. Thomas
          Noe Astorga-Corral
P.O. Box 1945
Albuquerque, NM 87110
Telephone:    (505) 883-2500
bet@sutinfirm.com
nxa@sutinfirm.com
*Attorneys for Plaintiffs*